UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABCDE OPERATING, LLC,

      Plaintiff,

v.

KEVIN JONES and
CITY OF DETROIT,

      Defendants.
      _____/

Case No. 17-10138

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFF'S
AMENDED MOTION FOR PRELIMINARY INJUNCTION [10]**

    Plaintiff ABCDE Operating, LLC, doing business as the Penthouse Club, an adult entertainment establishment, commenced this suit in this Court on January 16, 2017, seeking a declaration that the rules and procedures used by the Defendant City of Detroit to suspend or revoke a license to operate an adult cabaret do not comport with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.[1]  Through the present motion filed on February 2, 2017, shortly after this suit was brought, Plaintiff requests that the Court preliminarily enjoin the Defendant City and the manager of its Business License Center, Defendant Kevin Jones, from initiating the City's allegedly unlawful license revocation process in an effort to suspend or revoke Plaintiff's license to operate the Penthouse Club.

---

[1] Plaintiff has asserted other claims as well, but only its due process challenge is relevant to the matters addressed in this opinion and order.

Plaintiff's motion has been fully briefed by the parties, and on May 31, 2017, the Court heard oral argument on this motion. For the reasons stated more fully below, the Court DENIES Plaintiff's motion.

## I.   FACTS

Plaintiff ABCDE Operating, LLC operates the Penthouse Club, an adult cabaret located on Eight Mile Road in the City of Detroit. According to Plaintiff's complaint, the Penthouse Club is "currently licensed by [the] Defendant City of Detroit as a sexually oriented business," and it "offers, for its patrons, performances of dance intended to convey an erotic message, which is expressive conduct protected by the First Amendment." (Complaint at ¶ 5.) As a sexually oriented business, Plaintiff's club is subject to a number of municipal regulations set forth in the Defendant City's Sexually Oriented Business Ordinance ("SOBO"), (*see* Complaint, Ex. 1, Detroit City Code Article XV), including a requirement that it must secure a "valid sexually-oriented business license," (*id.* at § 5-15-21(a)).

As detailed at length in a summary judgment ruling issued in an earlier case brought by Plaintiff against the Defendant City and a number of law enforcement officers employed by the Detroit Police Department ("DPD"), the DPD's Vice Enforcement Unit ("VEU") has carried out a number of enforcement actions at Plaintiff's club dating back to January of 2014. *See ABCDE Operating, LLC v. City of Detroit,* No. 14-13158, Dkt. 81, 5/25/2017 Opinion and Order at 6-18. Although these enforcement actions have uncovered a number of alleged violations of the SOBO, Plaintiff states that it has annually applied for and obtained the requisite sexually oriented business license each year since 2010. (*See* Complaint at ¶¶ 22-24.)

On January 10, 2017, counsel for the Defendant City sent an e-mail to Plaintiff's counsel indicating that the City intended to seek the suspension or revocation of Plaintiff's sexually oriented business license unless Plaintiff agreed to certain conditions, including (i) the discontinuation of so-called "VIP" rooms at Plaintiff's club, and (ii) the dismissal of the claims brought in Plaintiff's prior suit against the City of Detroit.[2] In response, Plaintiff commenced the present action on January 16, 2017 against the City and the manager of its Business License Center, Defendant Kevin Jones, challenging the constitutionality of the rules and procedures adopted by the Defendant City for pursuing the suspension or revocation of a sexually oriented business license.[3] Shortly thereafter, Plaintiff filed the present motion, seeking a preliminary injunction that would prevent the City from invoking its allegedly unconstitutional rules and procedures in an effort to suspend or revoke Plaintiff's license to operate its club.

When Plaintiff brought this suit and filed its present motion for a preliminary injunction, the Defendant City had not yet initiated the process for suspending or revoking Plaintiff's license to operate the Penthouse Club. Since that time, however, the record indicates that the City has commenced an administrative proceeding to suspend or revoke Plaintiff's

---

[2] As noted, the Court recently issued a ruling in this prior case, awarding summary judgment in favor of the Defendant City and DPD officers and dismissing each of the claims asserted by Plaintiff.

[3] Apart from its constitutional challenges to the City's license revocation procedures, Plaintiff also has asserted a claim of retaliation in violation of the First Amendment. In support of this claim, Plaintiff alleges that Defendants' threat to seek the suspension or revocation of Plaintiff's sexually oriented business license was unlawfully motivated by Plaintiff's exercise of its constitutionally protected right of access to the courts, as reflected in Plaintiff's commencement of its prior suit against the City of Detroit and several DPD officers. This claim of retaliation is not pertinent to the resolution of Plaintiff's present motion.

3

license, and a hearing officer evidently has presided over several days of hearings. (*See* Dkt. 19, Plaintiff's 4/25/2017 Emergency Motion for Temporary Restraining Order at ¶¶ 21-22.)[4] At the conclusion of this administrative proceeding, the hearing officer issued a May 22, 2017 decision and order providing that effective June 12, 2017, Plaintiff's license would be suspended for a period of six months. (*See* Dkt. 24, 5/22/2017 Decision and Order.)

## II. STANDARD OF REVIEW

Through the present motion, Plaintiff seeks an order preliminarily enjoining Defendants from invoking the Defendant City's allegedly unconstitutional rules and procedures for the purpose of suspending or revoking Plaintiff's license to operate a sexually oriented business. The decision whether to award preliminary injunctive relief is governed by a familiar four-part standard, under which the Court must consider (i) whether Plaintiff, as the moving party, has a strong likelihood of success on the merits, (ii) whether Plaintiff would suffer irreparable injury in the absence of injunctive relief, (iii) whether an award of preliminary injunctive relief would cause substantial harm to others, and (iv) whether the public interest would be served by the requested award. *Sandison v. Michigan High School Athletic Association, Inc.,* 64 F.3d 1026, 1030 (6th Cir. 1995). These four considerations "are factors to be balanced and not prerequisites that must be satisfied," and "are not meant to be rigid and unbending requirements." *American Imaging Services, Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Industries, Inc.),* 963 F.2d 855, 859

---

[4]After this proceeding was underway and several days of hearings had been held, Plaintiff filed an emergency motion requesting that the Court either (i) enjoin any further efforts by Defendants to suspend or revoke Plaintiff's license, or (ii) accelerate the hearing on Plaintiff's present motion. The Court denied this emergency motion in an order dated May 3, 2017.

4

(6th Cir. 1992). "Moreover, a district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are dispositive of the issue." *Jones v. City of Monroe,* 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other grounds as recognized in Anderson v. City of Blue Ash,* 798 F.3d 338, 357 n.1 (6th Cir. 2015).

### III.    ANALYSIS

#### A.    Plaintiff's Request for Preliminary Injunctive Relief Is Moot.

Before turning to the merits of Plaintiff's motion for a preliminary injunction, the Court first considers whether this motion has been rendered moot in light of events that have transpired since it was filed. As the Sixth Circuit has explained, a claim for relief is moot when subsequent developments "render the court unable to grant the requested relief." *Speer v. City of Oregon,* 847 F.2d 310, 311 (6th Cir. 1988) (internal quotation marks and citation omitted); *see also Fredette v. Hemingway,* No. 02-1884, 65 F. App'x 929, 931 (6th Cir. April 1, 2003). Applying this principle here, the Court finds that it is no longer able to award the relief sought in the present motion.

As noted earlier, at the time Plaintiff commenced this suit and filed its present motion, the Defendant City had not yet initiated a proceeding to suspend or revoke Plaintiff's license to operate a sexually oriented business, but had merely sent Plaintiff's counsel an e-mail stating its intention to do so. Against this procedural backdrop, Plaintiff has requested in its present motion that the Court enter an order preliminarily enjoining Defendants from invoking § 5-15-27 of the Detroit City Code and the associated administrative rules and procedures that establish and govern the process for suspending or revoking a sexually oriented business license. (*See* Plaintiff's Amended Motion for Preliminary Injunction at 4.)

Since this motion was filed, however, the City has followed through with its stated intention to seek the suspension or revocation of Plaintiff's license. More specifically, the record indicates that on or around March 13, 2017, the City commenced an administrative proceeding to suspend or revoke Plaintiff's license, and that a hearing officer has subsequently presided over several days of hearings in this matter. (*See* Dkt. 19, Plaintiff's 4/25/2017 Emergency Motion for Temporary Restraining Order at ¶¶ 21-22.) More recently, the hearing officer issued a decision and order providing that Plaintiff's license should be suspended for six months. (*See* Dkt. 24, 5/26/2017 Decision and Order.) In light of these developments, the Court can no longer enjoin Defendants from invoking the City Code provisions and corresponding administrative rules and procedures that govern the suspension or revocation of Plaintiff's sexually oriented business license, because Defendants have already taken the actions that Plaintiff seeks to enjoin. It follows that Plaintiff's request for preliminary injunctive relief must be denied as moot.

**B.  Plaintiff Has Not Demonstrated a Likelihood of Success on the Merits of Its Constitutional Challenges to the Defendant City's Process for Seeking to Suspend or Revoke a Sexually Oriented Business License.**

Having determined that the relief sought in Plaintiff's motion is no longer available, the Court proceeds somewhat more quickly through the four factors that govern a decision whether to grant a preliminary injunction. First, the Court must consider whether Plaintiff has demonstrated "a strong likelihood of success on the merits" of its constitutional challenges to the rules and procedures used by the Defendant City in seeking to suspend or revoke a sexually oriented business license. *Sandison,* 64 F.3d at 1030 (internal quotation marks and citation omitted). Plaintiff has asserted two such challenges, contending (i) that the practices employed in proceedings to suspend or revoke a sexually

oriented business license do not comport with the dictates of procedural due process, and (ii) that these practices fail to meet the standards of the First Amendment for denial of a license to engage in expressive activity.

Turning first to Plaintiff's due process challenge, the Court observes as a threshold matter that Plaintiff has advanced only a facial challenge to the procedures governing a proceeding to suspend or revoke a sexually oriented business license. As explained earlier, no such proceeding had yet been brought against Plaintiff at the time it filed the present motion, but the record indicates that an administrative proceeding has since been convened, with several days of hearings and a decision by the hearing officer. Nonetheless, Plaintiff has made no effort to supplement its motion with any transcripts or other materials from this proceeding that might support an as-applied challenge to the rules and procedures as actually employed in the specific proceeding against Plaintiff.[5] Rather, Plaintiff instead points to several purported deficiencies in the rules and procedures as they generally apply in the Defendant City's license suspension and revocation proceedings, including: (i) that the hearing officer is not strictly bound by the rules of evidence, but has

---

[5] To be sure, at the May 31 hearing on the present motion, Plaintiff's counsel complained of various alleged infirmities in this proceeding. Nearly all of these complaints, however, were directed at the merits of the hearing officer's rulings as he presided over the administrative proceeding, and not any unfairness in the rules and procedures applied by the hearing officer in the course of the proceeding.

The sole claim of procedural unfairness identified at the May 31 hearing was Plaintiff's contention that the hearing officer improperly expanded the list of alleged SOBO violations without notice when he addressed alleged violations occurring in May and September of 2016. (*See* Dkt. 24, 5/26/2017 Decision and Order at 4.) Yet, the notice of intent issued by the Defendant City at the outset of the administrative proceeding expressly identified these alleged violations as among the grounds for seeking the suspension or revocation of Plaintiff's license. (*See* Dkt. 19-2, 3/13/2017 Notice of Intent at 2.) Accordingly, Plaintiff's claim of lack of notice is wholly without merit.

broad discretion to consider inadmissible evidence such as hearsay; (ii) that a licensee lacks the ability to compel the appearance of witnesses or to cross-examine witnesses called by the City; (iii) that a licensee has no right to pre-hearing discovery; (iv) that the City's rules and procedures do not specify a standard of proof that must be met to suspend or revoke a license; and (v) that the hearing officer is not authorized to decide constitutional issues, such as alleged Fourth Amendment violations that might trigger the exclusion of evidence. The Court addresses each of these alleged deficiencies in turn.

First, Plaintiff has failed to cite any authority for the proposition that an administrative proceeding to suspend or revoke a business license must be governed by the rules of evidence in order to comport with the dictates of due process. To the contrary, the courts have recognized that hearsay generally "is admissible in an administrative proceeding, provided it is relevant and material." *Myers v. Secretary of Health & Human Services,* 893 F.2d 840, 846 (6th Cir. 1990); *see also Amundsen v. Chicago Park District,* 218 F.3d 712, 717 (7th Cir. 2000). Plaintiff has not suggested any reason why this general rule should not apply to the specific type of proceeding at issue here. Moreover, to the extent that Plaintiff contends that the pertinent City of Detroit rules and procedures grant a hearing officer unfettered discretion to admit or exclude evidence, Defendants correctly observe that this discretion is significantly cabined by a provision that precludes the hearing officer from "admitting any evidence where the admission would be contrary to the due process of law." (Defendants' 2/23/2017 Response, Ex. A, Rules and Procedures at § 3.4(c).)

Turning next to Plaintiff's complaint that a licensee cannot compel the appearance of witnesses at an administrative hearing to suspend or revoke a sexually oriented business license, Defendants point to case law demonstrating that the constitutional guarantee of

8

due process does not broadly mandate this power of compulsory process in administrative proceedings. In *Belew v. Giles County Adult-Oriented Establishment Board,* No. 01-0139, 2005 WL 6369661, at *1-*2, *13 (M.D. Tenn. Sept. 30, 2005), for example, an exotic dancer challenged the constitutionality of regulations governing entertainment at adult-oriented establishments, on the ground, among others, that the administrative process for securing the required permit did not "provide an unsuccessful applicant subpoena power or any other means of compulsory process to procure the attendance of witnesses or ensure the production of documentary evidence." The court rejected this argument, explaining that "the inability to subpoena witnesses is not a per se violation of an applicant's right to procedural due process":

> Under the [pertinent state statute], an aggrieved party has the right to a hearing and to present evidence. There is no showing that an aggrieved party will be unfairly prevented from providing sufficient evidence at the hearing or that a subpoena is particularly necessary. Further, the aggrieved party's recourse to an adverse decision is through the safeguard of requiring the [defendant] board to submit its decision for judicial review while the [aggrieved] party's status quo is maintained. The plaintiff does not cite any authority in support of her contention that subpoena power is a requirement under procedural due process. To be sure, . . . there may be situations where procedural due process dictates that an aggrieved party possess subpoena power. However, the Court is not confronted with such a situation, and there is not any information before . . . the Court to say that the [state statute] facially works an injustice without such a requirement.

*Belew,* 2005 WL 6369661, at *14 (internal quotation marks and citations omitted); *see also Schultz v. Wellman,* 717 F.2d 301, 307 & n.15 (6th Cir. 1983); *Amundsen,* 218 F.3d at 717; *G & G Fremont, LLC v. City of Las Vegas,* No. 14-00688, 2016 WL 4107676, at *6 (D. Nev. Aug. 1, 2016). Indeed, a case cited by Plaintiff itself holds that "procedural due process . . . does not require an absolute or independent right to subpoena witnesses in

administrative hearings." *Foxy Lady, Inc. v. City of Atlanta,* 347 F.3d 1232, 1237 (11th Cir. 2003).[6]

Next, Plaintiff suggests that the Defendant City's rules and procedures run afoul of the constitutional guarantee of due process by preventing licensees from cross-examining witnesses. As Defendants observe in response, however, the City's rules expressly state that "[t]he applicant or licensee, or their attorney or authorized representative, may cross-examine any witness" called by the City. (Defendants' 2/23/2017 Response, Ex. A, Rules and Procedures at § 3.4.) Accordingly, this challenge lacks evidentiary support.[7]

Plaintiff next contends that under due process principles, a licensee should be allowed to conduct discovery in advance of an administrative hearing to suspend or revoke its license. Again, however, the case law does not recognize any such general right to pre-hearing discovery in an administrative proceeding. *See, e.g., Yashon v. Hunt,* 825 F.2d 1016, 1025 (6th Cir. 1987); *Silverman v. Commodity Futures Trading Commission,* 549 F.2d 28, 33 (7th Cir. 1977); *G & G Fremont,* 2016 WL 4107676, at *6. Rather, the Sixth Circuit has emphasized that the "primary concern" of the guarantee of due process is "to ensure that [the aggrieved party] ha[s] an adequate opportunity to prepare or develop his defense to the charges leveled against him." *Yashon,* 825 F.2d at 1025. Defendants point to various provisions in the City's rules and procedures that safeguard this opportunity,

---

[6]Moreover, the specific administrative proceeding at issue here has already been held, but Plaintiff has not identified any witness it wished to call whose testimony, if presented, might have altered the outcome of the proceeding.

[7]In addition, Plaintiff again has failed to identify any instance in the administrative proceeding actually held in this case where it was prevented from cross-examining a witness.

10

including requirements (i) that the parties attend a conference at least seven days in advance of the administrative hearing, at which they identify the witnesses they intend to call and "the nature and type of evidence to be offered at the hearing," (Rules and Procedures at § 2.3(a), (d)), and (ii) that the licensee be allowed, in advance of the hearing, to "review the relevant available public records concerning the proceeding," (*id.* at § 2.4(a)).

Turning next to the failure of the City's rules and procedures to specify the standard of proof that the City must meet to suspend or revoke a sexually oriented business license, Defendants correctly observe that the governing standard may be found in Article 6, Section 28 of the Michigan Constitution, which states:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, at a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

This requirement of "substantial evidence," in turn, is defined under Michigan law as evidence that "a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Petrelius v. Houghton-Portage Township Schools,* 281 Mich. App. 520, 761 N.W.2d 395, 397 (2008) (internal quotation marks and citation omitted).

Finally, Plaintiff suggests that the Defendant City's rules and procedures transgress the constitutional guarantee of due process by failing to allow for a licensee to raise constitutional issues during the administrative proceedings. To the extent Plaintiff contends, however, that a licensee should be able to challenge a hearing officer's

11

admission of evidence as the product of a constitutional violation, Defendants point to case law holding that the exclusionary rule does not apply in administrative proceedings, *see Garner v. Lambert,* 558 F. Supp.2d 794, 803-04 (N.D. Ohio 2008), *aff'd,* 345 F. App'x 66 (6th Cir. Sept. 1, 2009), and Plaintiff has not cited any authority to the contrary. More generally, the Sixth Circuit has observed that it is generally "pointless" to raise a constitutional challenge in an administrative hearing, *Costantino v. TRW, Inc.,* 13 F.3d 969, 975 (6th Cir. 1994), particularly where a licensee may pursue such a challenge in the course of the judicial review that is expressly authorized under the Detroit City Code. (*See* Complaint, Ex. 1, Detroit City Code § 5-15-27(f).)[8] Accordingly, the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits of its various due process challenges to the rules and procedures used by the Defendant City in administrative proceedings to suspend or revoke a sexually oriented business license.

This leaves only Plaintiff's claim that the City's license revocation procedures run afoul of the First Amendment because they purportedly (i) fail to guarantee a prompt judicial decision on appeal from an adverse administrative ruling, and (ii) operate as an unlawful prior restraint. As to the first of these challenges, the Sixth Circuit addressed the constitutional mandate of "prompt judicial review" in *729, Inc. v. Kenton County Fiscal Court,* 515 F.3d 485, 495-501 (6th Cir. 2008). In particular, the court found that this

---

[8]Indeed, Defendants' response to Plaintiff's motion is accompanied by a Michigan circuit court opinion reviewing a hearing officer's decision to revoke a sexually oriented business license granted to another adult entertainment establishment in the City of Detroit. (*See* Defendants' 2/23/2017 Response, Ex. B, *City of Detroit v. ZMCC, Inc.,* 8/23/2016 Circuit Court Opinion.) In this ruling, the state court addresses many of the same due process and other constitutional challenges advanced by Plaintiff in this suit. While this state circuit court decision has no precedential weight here, the Court nonetheless has found this well-reasoned opinion to be quite helpful in analyzing the issues presented in this case.

requirement is satisfied by "a state's ordinary court procedures," so long as the regulatory scheme that governs the underlying administrative proceeding establishes "reasonably objective, nondiscretionary criteria and does not seek to censor content." *729, Inc.,* 515 F.3d at 495 (internal quotation marks and citations omitted).  The Court agrees with Defendants that this standard is met here, where the relevant portion of the Detroit City Code specifies the precise conditions under which a sexually oriented business license may be suspended or revoked, (*see* Complaint, Ex. 1, Detroit City Code at § 5-15-27(a)(1)-(10)), and where none of these conditions are triggered by or otherwise implicate expressive activity protected by the First Amendment.  Thus, the ordinary judicial review conferred under § 5-15-27(f) of the City Code is sufficiently "prompt" to meet the dictates of the First Amendment.

As for Plaintiff's claim of prior restraint, Defendants correctly observe that the City's license revocation procedures expressly protect against any constitutionally problematic restraint of protected activity prior to a judicial decision.  Specifically, the same City Code provision that grants a right of judicial review further dictates that upon the exercise of this right, "the Business License Center shall immediately issue the applicant or licensee a provisional business license to operate," and that this "provisional business license shall allow the applicant or licensee to continue operation of the sexually-oriented business" until the court rules on the licensee's appeal.  (Complaint, Ex. 1, Detroit City Code at § 5-15-27(f).)  Accordingly, Plaintiff's appeal to the First Amendment fares no better than its due process challenge in demonstrating a likelihood of success on the merits.

**C.      Plaintiff Has Not Shown that It Would Suffer Irreparable Injury in the Absence of a Preliminary Injunction.**

The second factor in the Court's analysis of Plaintiff's request for a preliminary injunction is whether Plaintiff would suffer irreparable injury in the absence of such relief. *See Sandison,* 64 F.3d at 1026. The Court previously addressed this factor in its May 3, 2017 ruling on Plaintiff's emergency motion for a temporary restraining order, and no intervening developments warrant a different outcome here.

To the extent that Plaintiff's motion even addresses the question of irreparable injury, Plaintiff evidently suggests that it would be harmed in the absence of injunctive relief because an adverse ruling in the administrative proceeding would result in the revocation or suspension of its license and "the loss of its closely-held business." (Plaintiff's Amended Motion for Preliminary Injunction at ¶ 9.) Yet, as explained in the Court's May 3 order, "the Defendant City states without contradiction that Plaintiff would be entitled to continue operating its club while it pursued judicial review of this adverse administrative decision." (Dkt. 22, 5/3/2017 Order at 4.) In particular — and as already discussed in this opinion — the Detroit City Code grants a provisional license to an aggrieved licensee while it seeks judicial review of an adverse administrative ruling, and it further dictates that the licensee must be allowed to "continue [the] operation of [its] sexually-oriented business" until its appeal is decided. (Complaint, Ex. 1, Detroit City Code § 5-15-27(f).)[9]

---

[9] At the May 31 hearing on the present motion, counsel for Plaintiff suggested that this provisional license does not ensure that Plaintiff's club will remain open during the judicial review process, since the City may still pursue other avenues, such as a nuisance action, to shut down Plaintiff's business. Yet, the Court fails to see how the availability of other, wholly separate means of regulating or closing down a business could demonstrate irreparable harm flowing from the enforcement scheme at issue here. Moreover, defense counsel correctly observed at the May 31 hearing that these other means of regulation provide their own procedural safeguards — *e.g.,* a claim of nuisance must be brought before and heard by a court before relief may be awarded. Finally, Plaintiff's claim of other potential threats to the continued operation of its club is wholly speculative, where nothing

As stated in the Court's May 3 order, Plaintiff's "continuing ability to operate its business — which Plaintiff does not even address, much less dispute, in its present motion — defeats Plaintiff's claim that it faces irreparable harm in the event that the administrative hearing officer determines that its business license should be suspended or revoked." (Dkt. 22, 5/3/2017 Order at 5.) Accordingly, this factor militates against a grant of preliminary injunctive relief.

### D. The Remaining Two Factors Do Not Support an Award of Preliminary Injunctive Relief.

Finally, the Court considers whether the issuance of a preliminary injunction would cause substantial harm to others or would serve the public interest. *See Sandison,* 64 F.3d at 1030. In light of the hearing officer's determination that Plaintiff's sexually oriented business license should be suspended for six months due to Plaintiff's several violations of the Defendant City's SOBO, it stands to reason that the injunctive relief sought by Plaintiff would threaten harm to the public by allowing the continued operation of Plaintiff's club despite these violations. Similarly, an order enjoining the enforcement of the City's license revocation process would run counter to the public interest under the present record, as it would permit an adult entertainment establishment to continue operating throughout the pendency of this suit despite an administrative determination that this establishment had repeatedly violated a municipal ordinance governing its activities.[10]

---

in the record indicates that the club faces an imminent shutdown despite the provisional license granted under the City Code.

[10]To be sure, Plaintiff might yet succeed in overturning this administrative decision through the judicial review conferred under the City Code. In the meantime, however, Plaintiff may continue to operate its club under a provisional license, and Plaintiff's success in the state court presumably would lead to the full reinstatement of its license and the

15

Consequently, none of the four relevant factors support the award of preliminary injunctive relief sought by Plaintiff.

## IV. CONCLUSION

For these reasons,

The Court hereby DENIES Plaintiff's February 2, 2017 amended motion for a preliminary injunction. (Dkt. 10.)

SO ORDERED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: July 25, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2017, by electronic and/or ordinary mail.

       s/Carol J. Bethel
       Case Manager

---

continued operation of its club, without the need for any preliminary injunctive relief from this Court. Thus, Plaintiff's claim to this relief does not hinge in any way upon the correctness of the hearing officer's decision to suspend Plaintiff's license for six months.

16