UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABCDE OPERATING, LLC,

    Plaintiff,

v.

KEVIN JONES and
CITY OF DETROIT,

    Defendants.
                                       /

Case No. 17-10138

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE [27]**

Plaintiff ABCDE Operating, LLC, doing business as the Penthouse Club, an adult entertainment establishment, commenced this suit in this Court on January 16, 2017, asserting due process and other challenges to the procedures used by the Defendant City of Detroit to suspend or revoke a license to operate an adult cabaret. Shortly after this suit was filed, the Defendant City and the manager of the City's Business License Center, Defendant Kevin Jones, invoked these challenged procedures in an effort to suspend or revoke Plaintiff's license to operate the Penthouse Club, and on May 22, 2017, administrative hearing officer Richard J. Bowers issued a decision and order providing that effective June 12, 2017, Plaintiff's license would be suspended for a period of six months. (*See* Dkt. 24, 5/22/2017 Decision and Order at 6.)[1]

---

[1] Under the Detroit City Code provision that governs the process for seeking to suspend or revoke a license to operate a sexually-oriented business, Plaintiff may seek judicial review of the hearing officer's decision, (*see* Complaint, Ex. 1, Detroit City Code § 5-15-27(f)), and the record indicates that Plaintiff is currently pursuing this remedy before the Michigan courts.

At a May 31, 2017 hearing before this Court on Plaintiff's motion for a preliminary injunction, Plaintiff's counsel argued on the record that the hearing officer's decision was contrary to law because the relevant provision of the Detroit City Code states that a license suspension "shall not exceed ninety (90) days." (Detroit City Code § 5-15-27(e).)[2] Two days later, on June 2, 2017, Hearing Officer Bowers issued an amended decision and order stating that Plaintiff's license was "**revoked**," rather than suspended, for the same six-month period set forth in his initial decision and order. (Plaintiff's Motion for Order to Show Cause, Ex. 2, 6/1/2017 Amended Decision and Order at 1 (emphasis in original).)[3] In Plaintiff's view, the timing of this amended decision suggests that counsel for Defendants likely engaged in *ex parte* communication with the hearing officer, relaying to him the statement of Plaintiff's counsel that a six-month license suspension was not authorized under the City Code, and perhaps urging him to issue an amended decision correcting this infirmity. Accordingly, through the present motion filed on June 7, 2017, Plaintiff requests that the Court issue an order directing Defendants and their counsel to show cause why they should not be sanctioned for their allegedly impermissible *ex parte* communication with Hearing Officer Bowers.

In response to Plaintiff's motion, Defendants concede that an attorney in the City of Detroit Law Department, Douglas M. Baker, informed Hearing Officer Bowers in a telephone call that his initial order of a six-month license suspension was "inconsistent with the language contained in the City's ordinance" that limited suspensions to no more than

---

[2]This same provision authorizes the revocation of a license for up to a year. (*Id.*)

[3]This amended decision is dated June 1, 2017, but the hearing officer evidently issued it the next day, June 2. (*See* Plaintiff's Motion, Ex. 1, 6/2/2017 e-mail.)

2

ninety days. (Defendants' Response, Ex. E, Baker Aff. at ¶ 13.) In particular, Mr. Baker states in an affidavit:

> (i) that following the May 31, 2017 hearing before this Court, counsel for Defendants in this case, Eric Gaabo, came to Mr. Baker's office and informed him "that there might be a clerical or typographical error in the hearing officer's May 24, 2017 Decision and Order," (*id.* at ¶¶ 11-12);
>
> (ii) that upon reviewing the hearing officer's decision, Mr. Baker and Mr. Gaabo confirmed "that the hearing officer had mistakenly used the words "suspend[]" and "suspended" instead of "revoke" and "revoked," (*id.* at ¶ 12);
>
> (iii) that during a "very brief" telephone call with Hearing Officer Bowers on June 1 or 2, Mr. Baker "stated that [he] was confused by the May 24, 2017 Decision and Order, because the remedy provided — a 6-month 'suspension,' rather than a 'revocation' — was inconsistent with the language contained in the City's ordinance," (*id.* at ¶ 13);[4] and
>
> (iv) that Hearing Officer Bowers "immediately acknowledged the conflict between the language of his Decision and Order and" the relevant City Code provision, § 5-15-27(e), and he "stated that he would clarify his intention by issuing a corrected Decision and Order," (*id.*).

Nonetheless, while Defendants agree that this *ex parte* telephone conversation between Mr. Baker and Hearing Officer Bowers led to the issuance of an amended decision and order that changed the six-month "suspension" of Plaintiff's license into a six-month "revocation," they point to case law indicating that a party may appropriately engage in *ex parte* communication with a judge in order to bring a clerical or typographical error to the court's attention. *See, e.g., Thomas v. District of Columbia,* 407 F. Supp.2d 102, 112 (D.D.C. 2005) (opining that "to the extent that a clerical error in a decision is detected by a party, the party has an affirmative obligation to inform the decision-maker such that the resulting [o]pinion reflects what was intended and actually decided").

---

[4]Mr. Baker denies that he "discuss[ed] the merits" of the hearing officer's decision during this phone call. (*Id.*)

Although the Court shares Plaintiff's skepticism that the *ex parte* communication between Mr. Baker and Hearing Officer Bowers concerned only a clerical mistake or typographical error, rather than a substantive matter, it is unnecessary to resolve this question. Rather, the proper disposition of Plaintiff's motion turns on a threshold issue that neither party has addressed to the Court's satisfaction — namely, whether this Court has the authority to investigate and take action against a non-party's purported ethical violation that has no apparent bearing upon this case. Under the undisputed record, the *ex parte* contact at issue here was initiated by Douglas Baker, a City of Detroit attorney who has not appeared on behalf of any party to this suit. Mr. Baker directed this *ex parte* communication to Hearing Officer Bowers, who likewise is not a party to this suit.[5] Although this *ex parte* communication conveyed information stated on the record at a May 31, 2017 hearing before this Court, Plaintiff does not suggest that counsel for Defendants in this case, Eric Gaabo, acted improperly or unethically by sharing this information with a colleague in the City of Detroit Law Department.[6]

---

[5]Moreover, the substance of the hearing officer's decision is not relevant to the proper disposition of the claims pending before this Court; rather, this case implicates only the process established under the Detroit City Code for determining whether to suspend or revoke a license to operate a sexually-oriented business. Any review of the substance of Hearing Officer Bowers' decision is a matter for the Michigan courts, and this review evidently is proceeding in that forum.

[6]To illustrate this point, consider another possible scenario. If Mr. Baker had taken the information learned from Mr. Gaabo and included it in a letter or e-mail to Hearing Officer Bowers with a copy to Plaintiff's counsel, Plaintiff presumably could not have complained that the amended decision subsequently issued by the hearing officer was the product of any unethical or otherwise improper conduct by Mr. Baker or Mr. Gaabo. Rather, it was Mr. Baker's disclosure of this information in an *ex parte* communication with Hearing Officer Bowers that has triggered Plaintiff's complaint in the present motion.

Under these circumstances, the Court finds no basis for conducting an inquiry into the alleged ethical violations of an individual, Mr. Baker, who has not participated in this suit in any fashion, whether as a litigant or as counsel. While Plaintiff appeals to *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133-34 (1991), as recognizing a federal court's inherent power to impose sanctions against a party or attorney who has engaged in bad-faith conduct, the courts have cautioned against the overly broad use of this authority to police the activities of non-parties. In *Helmac Products Corp. v. Roth (Plastics) Corp.,* 150 F.R.D. 563, 566-67 (E.D. Mich. 1993), for example, the court deemed it appropriate to sanction the individual owner and chief executive officer of the corporate defendant for directing the destruction of documents responsive to the plaintiff's discovery requests, reasoning that this individual was "closely tied to the litigation" and that his actions "directly interfered with the conduct of trial." In so ruling, the court adopted a two-part standard for determining whether a non-party who is not subject to a court order may be sanctioned under the court's inherent authority: the non-party "must (1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered." *Helmac Products,* 150 F.R.D. at 568. The court explained that "[t]his test will effectively limit the scope of the Court's inherent power to sanction to those individuals who were either (1) parties, (2) subject to a court order, or (3) real parties in interest." 150 F.R.D. at 568; *see also In re VIII South Michigan Associates,* 175 B.R. 976, 983-87 (Bankr. N.D. Ill. 1994) (discussing *Helmac Products* and other cases in determining that "[t]he holding in *Chambers* . . . should not be extended to non-party expert witnesses who have not appeared in court, testified in any proceeding, nor violated a court order").

Applying these principles here, the Court concludes that the inherent authority recognized by the Supreme Court in *Chambers* does not reach the conduct of Mr. Baker in connection with the administrative proceeding initiated by the Defendant City to suspend or revoke Plaintiff's license to operate a sexually-oriented business. First, Mr. Baker is not a party to this suit, has not appeared on behalf of any party, and is not subject to any order issued in these proceedings. Next, although Mr. Baker works in the City of Detroit Law Department and is a colleague of the attorney, Mr. Gaabo, who is representing Defendants in this suit, it cannot be said that he has any interest, substantial or otherwise, in the outcome of this litigation, such that he could be deemed either a "real party in interest" to this suit or a representative of such a party. Likewise, Mr. Baker has not participated in any proceedings in the case before this Court, whether in an individual or representative capacity. Accordingly, none of the factors discussed in *Helmac Products* are satisfied here, nor has Plaintiff otherwise identified any considerations that would warrant this Court's inquiry into the activities of a non-party that took place wholly outside these proceedings and have no apparent bearing on the claims and issues raised in this case.

It bears emphasis, in closing, that other avenues are available to Plaintiff for seeking relief from Mr. Baker's alleged ethical violation. Most notably, Plaintiff evidently has invoked § 5-15-27(f) of the Detroit City Code to seek judicial review of Hearing Officer Bowers' decision, and the state court that hears this appeal seemingly would be well positioned to examine the conduct of counsel in the administrative proceeding under review. Indeed, Plaintiff recently filed a transcript from a state court proceeding that confirms this belief. (*See* Dkt. 34, 7/7/2017 State Court Hearing Tr.) This transcript reveals that Plaintiff squarely raised its complaint of improper *ex parte* communication between Mr.

Baker and Hearing Officer Bowers, and that the state court (i) agreed that this communication was improper, as it concerned a substantive matter rather than a clerical error, but (ii) determined that no relief was warranted because the Hearing Officer's amended decision reflected what he had intended all along, regardless of Mr. Baker's *ex parte* communication — namely, a 180-day revocation of Plaintiff's sexually oriented business license. (*See id.* at 4-8, 13.) This state court inquiry lends further support to the Court's conclusion that this is not the proper forum for investigating Mr. Baker's alleged ethical violation.

For these reasons,

The Court hereby DENIES Plaintiff's June 7, 2017 motion for an order to show cause why Defendants should not be sanctioned for *ex parte* communications (Dkt. 27).

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: August 17, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 17, 2017, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager